# Procedures for Investigating Allegations Concerning Senior Administration Officials

A proposal whereby personnel from one agency's Office of Inspector General would conduct an investigation of allegations of non-criminal misconduct by employees of another agency, or by the head of another agency, and report to the President's Council on Integrity and Efficiency, is of questionable legality.

The President has inherent authority to supervise and direct the performance of his appointees in office, and to investigate allegations of possible misconduct related to that performance.

Under the Inspector General Act, an Inspector General and his staff are authorized to conduct investigations into allegations of misconduct only when those allegations involve fraud and abuse in the programs and operations of the particular agency in which the office is located.

An agency head has authority to investigate allegations of misconduct against any officer or employee of his agency, including the agency's Inspector General. If under the circumstances he deems it prudent, an agency head may request that investigative personnel be detailed from another agency on a reimbursable basis to conduct such an investigation, though in such a case the investigative authority of any such detailed personnel could not exceed his own.

November 5, 1982

MEMORANDUM OPINION FOR THE SPECIAL COUNSEL TO THE
ASSISTANT ATTORNEY GENERAL, CRIMINAL DIVISION

In accordance with your request, we have reviewed the draft proposal entitled "Procedures for Investigating Allegations Concerning Senior Administration Officials." The draft proposal was prepared for the President's Council on Integrity and Efficiency, and forwarded to you on October 4, 1982, by Joseph Wright, Chairman of the Council. You indicate that some specific questions were raised at the Council's October 12 meeting relating to the source of authority for certain of the proposed procedures, including the authority to pay the costs of an investigation. Concern was also expressed over the potential for conflict among federal law enforcement agencies generated by the proposed procedures. Our review indicates that the proposed procedures, as we understand them, are legally deficient in several respects.

## I.

The procedures set forth in the draft proposal apply whenever the Council or one of its members receives an "allegation" concerning an Inspector General, a

staff member in an Office of Inspector General, or the head of a department or agency represented on the Council.[1] Any allegation of criminal conduct received, or evidence of criminal conduct "uncovered" during the course of an investigation, will be referred directly to the Department of Justice, as is required by 28 U.S.C. § 535. Under such circumstances, "the fact finding for the Council will be terminated until Justice has completed its review."

"Non-criminal allegations"[2] against an Inspector General, or a presidentially appointed Deputy Inspector General, are to be "brought to the attention of" the Chairman of the Council. The Chairman, "in consultation with" the head of the agency to whom the Inspector General reports and the Deputy Attorney General,

> shall request an Assistant Inspector General for Investigations (not reporting to the IG in question) to conduct a fact finding for the Chairman of the Council. For the purposes of this fact finding, the AIG (Investigations) will report directly to the Chairman.[3]

The report of the factfinder "shall be provided directly" to the Department of Justice, the Merit Systems Protection Board, the Office of Government Ethics, and the Office of Personnel Management, so that they might determine whether "there is evidence of any violations of laws or regulations for which they are responsible." These agencies are to notify the Chairman of "their findings and the actions which they will take." The Chairman himself is at this point provided with a "summary" of the factfinding. The Chairman, in consultation with the head of the agency to whom the Inspector General reports and the Deputy Attorney General, then reports to the Counsel to the President on the results of the factfinding.

Non-criminal allegations against Office of Inspector General staff, or against heads of departments and agencies represented on the Council, are also dealt with in the draft proposal. In brief, such allegations are to be referred by the Chairman of the Council to the responsible Inspector General for investigation. A copy of the Inspector General's report is to be provided to the head of the department or agency involved, in accordance with §§ 3(a) and 4(a)(5) of the Inspector General

---

[1] The Council was established as an interagency committee by Executive Order 12301 of March 26, 1981, 46 Fed. Reg 19211 Its 23 members include the Deputy Attorney General, the Director of the Office of Personnel Management, the Executive Assistant Director of Investigations of the Federal Bureau of Investigation, and all of the statutory Inspectors General except those of the military departments. Under Section 2 of the Executive Order, the Council is charged with developing plans for "coordinated government-wide activities which attack fraud and waste in government programs and operations," including "standards for the management, operation, and conduct of inspector general-type activities," and policies to ensure "the establishment of a corps of well-trained and highly skilled auditors and investigators " Section 2(d) directs the Council to "develop interagency audit and investigation programs and projects to deal efficiently and effectively with those problems concerning fraud and waste which exceed the capability or jurisdiction of an individual agency "

[2] The draft proposal does not give any examples of non-criminal activity which might be the subject of an allegation against an Inspector General. We assume that "non-criminal allegations" which could spark an investigation might be related directly to the Inspector General's performance of his statutory functions, or related more generally to his performance as an officer and employee of the United States.

[3] It is not clear from the draft proposal whether some procedure for screening non-criminal allegations is to be established, or whether (as it would appear from a literal reading of its provisions) each and every allegation brought to the attention of the Chairman or members of the Council must be the subject of factfinding by an Assistant Inspector General for Investigations.

Act of 1978, Pub. L. No. 95–452, 92 Stat. 1101, 5 U.S.C. App. (Supp. IV 1980). In addition, the Inspector General is required to "brief" the Chairman of the Council of any "significant findings" resulting from his investigations.[4] In the case of allegations against an agency head, the Inspector General is required to provide a copy of his report to the Department of Justice, the Merit Systems Protection Board, the Office of Government Ethics, and the Office of Personnel Management. These agencies in turn must determine whether there is evidence in the report of any violation of laws or regulations over which they have responsibility, and notify the Inspector General and the Chairman of the Council of "their findings and the actions which they will take." A summary of the Inspector General's factfinding is then provided to the Chairman of the Council, who, in consultation with the Deputy Attorney General, reports to the Counsel to the President on the results of the investigation.

The draft proposal also deals with the "release of investigatory files and report findings" pursuant to Freedom of Information Act and Privacy Act requests. Such requests are to be "handled according to established procedures."[5] With respect to Privacy Act requests, the draft proposal directs that "for each system of records created to contain these investigatory files, a regulation should be promulgated claiming the (j)(2) exemption."[6] The draft proposal further provides that all investigatory files and the investigative report are to be maintained by "[t]he IG's office that conducts the investigation."

## II.

The President has inherent authority to supervise and direct the performance of his appointees in office, and to investigate allegations of possible misconduct related to that performance. We assume for present purposes that much of this authority could be delegated to the Council or its Chairman. *See* 3 U.S.C. §§ 301, 302. However, Executive Order 12301 does not accomplish such a

---

[4] In the case of allegations against Office of the Inspector General staff, the Inspector General is required to "inform" the Chairman of "any significant adverse findings" resulting from his investigation and "the subsequent follow-up action." It is not clear whether in this case the Inspector General is also required to inform the Chairman of findings which are not "adverse."

[5] It is not clear whether the "established procedures" referred to are intended to include procedures to be established by the Council itself.

[6] The draft's reference to the "(j)(2) exemption" is apparently to the provision in the Privacy Act of 1974, Pub. L. 93–579, 88 Stat. 1897, 5 U.S.C. § 552a, which permits certain agencies to promulgate rules to exempt systems of records from certain of the Act's provisions. *See* 5 U S C. § 552a(j)(2). The (j)(2) exemption is available only to an agency "which performs as its principal function any activity pertaining to the enforcement of criminal laws . . . ." Most Offices of Inspector General, whose principal functions do not involve the enforcement of criminal laws, may avail themselves only of the more limited exemption contained in subsection (k)(2) of the Privacy Act for "investigatory material compiled for law enforcement purposes." *See, e.g.*, 24 C F.R. § 16.15(a)(2) (1981) (investigative files in HUD's Office of Inspector General exempt under § 552a(k)(2)). Note that, like subsection (j)(2), subsection (k)(2) permits an agency to exempt records from certain of the Act's accounting requirements, and from its provisions giving an individual access to information about himself. It does not permit an agency to exempt records from the Act's prohibitions on disclosure of information concerning individuals without their written consent. *See* § 552a(b). Circumstances under which such disclosure is permissible are discussed in note 12, *infra*.

delegation,[7] and the draft proposal does not refer to any other authority relied upon for the investigation of non-criminal allegations against an Inspector General. It is our understanding that in any event the Council has no funds appropriated to it which might be used for this purpose.[8]

Moreover, the Inspector General Act authorizes an Inspector General and his staff to conduct investigations into allegations of misconduct only when those allegations involve fraud and abuse in the programs and operations of the particular agency or department in which the Office is located.[9] Thus, funds appropriated for the activities of an Office of Inspector General in one agency would ordinarily not be available to conduct an investigation into allegations of misconduct by personnel in another agency. An Assistant Inspector General

---

[7] None of the Council's functions set forth in § 2 of the Order include any substantive investigative functions *See* note 1, *supra* While § 2(d) might be interpreted to authorize the Council to develop procedures to investigate misconduct by Inspectors General, we cannot construe it also to bestow authority on the Council actually to conduct such investigations Such a delegation of substantive presidential authority to an agency not otherwise authorized to engage in such activities would, in our view, have to be explicit *See* 3 U S C § 302. The Council Chairman's responsibilities under § 3 of the Order are confined to establishing procedures for the Council, reporting to the President and agency heads, and establishing committees of the Council. Section 4(c) describes the Chairman's analogous administrative functions in connection with the Coordinating Conference of the Council. We are unaware of any other presidential delegation or directive, either to the Council or to its Chairman, relating to the investigation of allegations against an Inspector General

[8] Under § 5(a) of Executive Order 12301, funds for the "administrative support" of the Council are provided by the Director of the Office of Management and Budget The head of each agency represented on the Council is responsible for providing its representative with "such administrative support as may be necessary, in accordance with law, to enable the agency representative to carry out his responsibilities." *See* § 5(b). While 31 U S.C. § 691 (1976) permits the expenditure of appropriated funds "for the expenses of committees, boards, or other interagency groups engaged in authorized activities of common interest," this statute does not provide authority for an agency represented on the Council to expend funds on activities which are not already authorized by its existing appropriation Section 691 allows an interagency group to continue in existence for longer than a year without separate appropriation for its activities, as would otherwise be required by 31 U.S C § 696, but does not provide any independent authority for the expenditure of agency funds *See* H.R Rep No. 2023, 78th Cong , 2d Sess. (1944). The absence of authority in one agency's Office of Inspector General to investigate another agency's Inspector General is discussed in the text and note 9 Similarly, while we have not examined the issue in detail, we are unaware of any funds appropriated to the Office of Management and Budget which could be used to conduct the sort of investigations contemplated in the proposed draft.

[9] The duties and responsibilities of an Inspector General under § 4(a) of the Inspector General Act are described in terms of "the establishment within which his Office is established." As more specifically enumerated in paragraphs (1) through (5) of that section, the Inspector General's duties and responsibilities are explicitly confined to the "programs and operations" of his own "establishment." Similarly, the investigative authority given each Inspector General under § 6(a) of the Act is limited to "programs and operations" of his own "establishment " Finally, the Inspector General is authorized under § 7(a) of the Act to investigate only complaints from employees "of the establishment." Section 11(2) of the Act defines an "establishment" as the particular agency or department in which the Office of Inspector General is established by the Act. The legislative history of the Inspector General Act makes plain that the Inspector General's authority and responsibility were intended to be restricted to the investigation of fraud and waste in the particular department in which his Office was established. *See, e.g* , S. Rep. No 1071. 95th Cong , 2d Sess. 7 (1978).

> [T]he legislation gives the [Inspector General] no conflicting policy responsibilities which could divert his attention or divide his time, his sole responsibility is to coordinate auditing and investigating efforts and other policy initiatives designed to promote the economy, efficiency and effectiveness of the programs of the establishment.

*See also* H R. Rep No 584, 95th Cong , 1st Sess 12–14 (1977); 124 Cong Rec. 32033 (1978) (remarks of Rep Fountain). The Office of Assistant Inspector General for Investigations is described in § 3(d)(2) of the Inspector General Act as having "responsibility for supervising the performance of investigative activities relating to . . programs and operations [of the establishment]." There is no authority under the Inspector General Act, or under any appropriation act of which we are aware, for an Assistant Inspector General for Investigations, or any member of an Inspector General's staff, to conduct investigations which do not "relate to" the "programs and operations" of the agency in which he is employed.

might lawfully be directed by his own agency head to investigate allegations against the Inspector General to whom he reports,[10] or allegations against another Inspector General on a detail basis.[11] However, an Assistant Inspector General has no authority under the Inspector General Act to conduct an investigation which is unrelated to his duties and responsibilities under the Act respecting his own agency.

## III.

We are less concerned over the provisions in the draft proposal which require that the factfinder's report in an investigation of non-criminal allegations against an Inspector General be sent to the Department of Justice, the Merit Systems Protection Board, the Office of Government Ethics, and the Office of Personnel Management. These provisions also come into play in connection with an investigation of non-criminal allegations against the head of an agency. As long as the factfinder is properly authorized to perform the investigation in question, and to disclose his report to other federal agencies, there would appear to us no reason in law why the named agencies should not receive a copy of the report.[12]

Moreover, none of the agencies named has exclusive or even primary jurisdiction over violations of the non-criminal laws and regulations for which they are responsible. *Compare* 28 U.S.C. § 535, which mandates the "expeditious[]" referral of all criminal information or allegations to the Department of Justice. Indeed, in some cases jurisdiction over non-criminal allegations attaches only after a matter has first been investigated at the agency level. *See, e.g.,* 5 U.S.C.

___

[10] Ordinarily, an agency head has authority, in the exercise of his supervisory responsibilities for the proper functioning of his agency, to investigate allegations of misconduct in office against an employee or officer of his agency, and to take appropriate action in the event those allegations prove well-founded. Funds appropriated for the general administration of the agency would be available for this purpose The agency head's authority extends to the agency's Inspector General, who under § 3(a) of the Inspector General Act reports to and is "under the general supervision of" the head of his agency However, § 3(a) also enjoins the agency head not to "prevent or prohibit the Inspector General from initiating, carrying out, or completing any audit or investigation .     ." Thus, an agency head might find it awkward to investigate allegations against his Inspector General without violating or appearing to violate this statutory restriction  Depending on the nature of the allegations against the Inspector General (*e g ,* whether the allegations related directly to the Inspector General's conduct of his statutory duties), the agency head might decide to limit his own personal involvement in the matter, and request the President to direct an investigation of the Inspector General's conduct.

[11] For obvious reasons, an agency head might not wish to rely upon one of the agency's own Inspector General's staff to conduct an investigation of the Inspector General himself  If appropriate investigative personnel were not available in other parts of his agency, the agency head could request that investigative personnel be detailed from another agency on a reimbursable basis, under authority of the Economy Act  *See* 31 U S.C. § 686. Personnel from another agency's Office of Inspector General would seem to be particularly suited for such a detail. We note, however, that in conducting an investigation in another agency at the request of the head of that agency, personnel detailed from another Inspector General's Office might be limited to the investigative authority of the head of the agency to which they were detailed  Many of the particular powers given an Inspector General and his staff under § 6(a) of the Inspector General Act, such as the power to subpoena documents, may not be available to an agency head conducting his own independent investigation of misconduct by officers of his agency

[12] The Privacy Act, 5 U.S C  § 552a, permits disclosure of records containing information about an individual without his consent in a number of specified circumstances, including two in particular which seem potentially applicable in this case. First, § 552a(b)(3) permits disclosure for a "routine use," *i.e.,* a use "for a purpose which is compatible with the purpose for which it was collected." *See also* § 552a(a)(7)  A "routine use" must be established by publication in the Federal Register  *See* § 552a(e)(4)(D). Second, § 552a(b)(7) permits disclosure to another federal agency "for a civil or criminal law enforcement activity if the activity is authorized by law " Disclosure under this section is permissible only if the head of the agency desiring the information has made a written request to the head of the agency maintaining the record

§ 1206(b) (Supp. II 1978) (Special Counsel of the Merit Systems Protection Board must refer complaints of prohibited personnel practices to the appropriate agency head for initial investigation). *See also* 5 U.S.C. § 2302(c) (agency head responsible for enforcement of laws and regulations relating to personnel management).

## IV.

The procedures proposed for investigating allegations against Office of Inspector General staff or the head of an agency seem to us for the most part legally unobjectionable. We question, however, whether an Inspector General would have authority under the Inspector General Act to investigate all non-criminal allegations against the head of the agency, including those unrelated to the Inspector General's statutory responsibilities respecting the programs and activities of his establishment. We also question whether either the Council or its Chairman has been properly authorized to receive information from an Inspector General relating to an investigation. *See* notes 7 and 12, *supra*.

## V.

We appreciate the Council's interest in devising an effective means of holding an Inspector General and his staff accountable for their conduct under non-criminal laws and regulations generally applicable to officers and employees of the Executive Branch. And we recognize that the Council's procedures are still in the process of development. While we have expressed a number of legal reservations about the procedures as presently drafted, it should be possible to accomplish the Council's objectives through more explicit reliance on the President's inherent authority to oversee the performance of his appointees in office.[13] In addition, depending on the nature of the allegations involved, the Council may find it useful to draw upon an agency head's inherent authority to supervise the conduct of officers and employees of his agency.[14]

We would be interested to learn what further steps the Council decides to take in connection with this matter, and to be of further assistance should you so desire.

RALPH W. TARR
*Deputy Assistant Attorney General*
*Office of Legal Counsel*

---

[13] While the President could delegate this oversight function in the case of Inspectors General to the Council or its Chairman, *see* 3 U.S C §§ 301 and 302, there would remain the question of what funds could be used to pay its costs *See* note 8, *supra*. If the President were to retain overall responsibility for directing investigations into allegations against an Inspector General, funds appropriated to the general activities of the White House Office could be used for this purpose. If necessary, trained investigative personnel, including Inspector General staff, could be detailed from other agencies on a reimbursable basis. *See* 3 U.S C. § 107. Alternatively, if the President were to direct the investigation of his appointees by an agency which is otherwise authorized to investigate particular types of misconduct, funds appropriated to that agency could be made available for the investigation.

[14] An agency head's authority to investigate allegations against officers and employees of his agency, and to use funds appropriated for the general administration of the agency for this purpose, is discussed in notes 10 and 11, *supra*. Under such circumstances the investigator should report directly to the agency head, rather than to the Chairman of the Council, as the proposal currently provides in the case of investigations of Inspectors General

631